**KAZEROUNI LAW GROUP, APC**
Jason Ibey, Esq. (284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**MHA MARK RODMAN d/b/a RODMAN WEDDING PHOTOGRAPHY; ALANA BANNER d/b/a A SALON SANTA FE; ELITE CASINO EVENTS LLC d/b/a EMME PHOTO BOOTH; and DONA & NIK LLC d/b/a MORINA PHOTOGRAPHY, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**v.**

**THE KNOT WORLDWIDE INC.,**

**Defendant.**

**Case No.:** 2:25-cv-03739-FMO-JPR

**CLASS ACTION**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Date: December 1, 2025
Time: 10:00 a.m.
Courtroom: 6D, 6th Floor

Judge: Hon. Fernando M. Olguin

KAZEROUNI LAW GROUP, APC

## TABLE OF CONTENTS

**Page Nos.**

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 1

III. THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED ..... 2

A. Choice of Law ..... 2

B. Formation ..... 3

i. *Plaintiffs Received the Terms of Purchase (Defendant's Exhibits C to F) Only After Signing Up with The Knot* ..... 3

ii. *Fatal Ambiguity in the Terms of Purchase and Terms of Use* ..... 5

a. The Terms of Purchase (Defendant's Exhibit A) ..... 5

b. The Terms of Use (Defendant's Exhibit B) ..... 7

c. The Terms of Purchase (Defendant's Exhibit C, D, E, and F) ..... 8

d. The Delegation Clause is Unworkable ..... 10

e. Ambiguities and Uncertainties are to Be Construed Against The Knot as the Drafter ..... 11

iii. *The Inconsistent Forum Selection Clauses* ..... 12

C. Unconscionability ..... 13

i. *The Arbitration Agreements and Delegation Clause are Procedurally Unconscionable* ..... 13

ii. *The Arbitration Agreements and Delegation Clause are Substantively Unconscionable* ..... 16

a. The Venue Selection Clause ..... 17

b. Unilateral Amendment Rights ........................................ 18

c. The Delegation Clause ................................................ 19

d. Deliberate Exclusion from Arbitration of Certain Claims Defendant is More Likely to Initiate ............................ 19

e. The Knot's Grand Scheme to Defraud .......................... 20

D. Severability ............................................................................ 21

V. DEMAND FOR TRIAL ..........................................................................22

VI. CONCLUSION ......................................................................................22






KAZEROUNI LAW GROUP, APC

## TABLE OF AUTHORITIES

**Page Nos.**

CASES

*ABF Capital Corp. v.* Osley,
414 F.3d 1061 (9th Cir. 2014) ........ 2

*Acad. Chi. Publishers v. Cheever*,
578 N.E.2d 981 (Ill. 1991) ........ 9

*American Online, Inc. v. Superior Court*,
90 Cal. App. 4th 1 (2001) ........ 2

*Armendariz v. Foundation Health Psychare Servs., Ins.*,
24 Cal. 4th 83 (2000) ........ 13

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ........ 2

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ........ 16

*Brennan v. Bally Total Fitness*,
198 F. Supp. 2d 377 (S.D.N.Y. 2002) ........ 13

*Brophy v. Ament*,
2008 U.S. Dist. LEXIS 108896 (D.N.M. July 9, 2008) ........ 13, 14

*Browne v. Solar,*
2024 N.Y. Misc. LEXIS 20796 (Sup. Ct. June 17, 2024) ........ 20

*Carbajal v. CWPSC, Inc.*,
245 Cal. App. 4th 227 (2016) ........ 15

*Carlson v. Home Team Pest Def., Inc.*,
239 Cal. App. 4th 619 (2015) ........ 21

*Champaign National Bank v. Landers Seed Co.*,
165 Ill. App. 3d 1090 (1988) ........ 10

*Circuit City Stores v. Adams*,
279 F.3d 889 (9th Cir. 2002)........................................................................ 3
*Constr. Mach. Co. v. Willard & Rodman, Inc.*,
208 Cal. App. 2d 31 (1962)......................................................................... 12
*Cordova v. World Fin. Corp.*,
146 N.M. 256 (2009)............................................................................. 13, 16
*Davis v. O'Melveny & Myers*,
485 F.3d 1066 (9th Cir. 2007)..................................................................... 16
*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ...................................................................................... 1
*Eisen v. Venulum Ltd.*,
244 F. Supp. 3d 324 (W.D.N.Y. 2017) ........................................................ 13
*Felderman v. U.S. Bank N.A.*,
2022 U.S. Dist. LEXIS 224131 (C.D. Cal. Dec. 12, 2022) ............................... 6
*Fiser v. Dell Comput. Corp.*,
188 P.3d 1215 (N.M. 2008) ........................................................................... 2
*Freedman v. Comcast Corp.*,
190 Md. App. 179 (2010)............................................................................. 13
*Guia v. World CDJR LLC*,
2019 U.S. Dist. LEXIS 66271 (E.D. Pa. Apr. 17, 2019) .................................. 2
*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
230 F.3d 549 (2d Cir. 2000)........................................................................... 2
*Hill v. Quicken Loans, Inc.*,
2019 U.S. Dist. LEXIS 226770(C.D. Cal. Oct. 17, 2019)............................... 22
*Hirsch v. Citibank, N.A.*,
2014 U.S Dist. LEXIS 83534 (S.D.N.Y. June 10, 2014)................................... 4
*I C L, Inc. v. Smithson*,
1986 U.S. Dist. LEXIS 25856 (N.D.N.Y. May 6, 1986) ................................. 15



KAZEROUNI LAW GROUP, APC

*Indep. Cellular Tel., Inc. v. Barker*,
1997 WL 153816 (Del. Ch. Mar. 21, 1997) .......... 9
*Jean v. Bucknell Univ.*,
2021 U.S. Dist. LEXIS 73384 (M.D. Pa. Apr. 16, 2021) .......... 13, 14, 16-18, 21
*Kilgore v. KeyBank Nat. Ass'n*,
673 F.3d 947 (9th Cir. 2012) .......... 16
*Lawson v. City of Phila.*,
2019 U.S. Dist. LEXIS 30010 (E.D. Pa. Feb. 22, 2019) .......... 11
*Lewandowski v. Megabus USA, LLC*,
613 F. Supp. 3d 909 (W.D. Pa. 2020) .......... 4
*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042 (2001) .......... 4
*Memory Integrity, LLC v. Intel Corp.*,
178 F. Supp. 3d 1022 (D. Or. 2016) .......... 9
*Mercuro v. Superior Court*,
96 Cal. App. 4th 167 (2002) .......... 11
*NAACP of Camden County East*,
421 N.J. Super. 404 (Aug. 2, 2011) .......... 11
*Neal v. State Farm Ins. Cos.*,
188 Cal. App. 2d 690 (1961) .......... 14
*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 8
*Nino v. Jewelry Exch., Inc.*,
609 F.3d 191 (3d Cir. 2010) .......... 20, 21
*O'Connor v. Uber Techs., Inc.*,
150 F. Supp. 3d 1095 (N.D. Cal. 2015) .......... 10
*Osterhaus Pharmacy Inc. v. CVS Health Corp.*,
2024 U.S. Dist. LEXIS 206717 (D. Ariz. Nov. 13, 2024) .......... 19

KAZEROUNI LAW GROUP, APC

*Pacheco v. Sec. Fin. Corp.*,
2006 U.S. Dist. LEXIS 116561 (D.N.M. June 7, 2006) .................................... 11
*Peavy v. Skilled Healthcare Grp., Inc.*,
470 P.3d 218 (2020)........................................................................................ 20
*Pinela v. Neiman Marcus Group, Inc.*,
238 Cal. App. 4th 227 (2015) .......................................................................... 17
*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) .................................................................................... 19
*Ronderos v. USP Reddaway, Inc.*,
2021 U.S. Dist. LEXIS 105731 (C.D. Cal. June 2, 2021) ................................. 21
*Rosen v. State Farm General Ins. Co.*,
30 Cal. 4th 1070 (2003) .................................................................................. 11
*Shroyer v. New Cingular Wireless Servs.*,
498 F.3d 976 (9th Cir. 2007)........................................................................... 13
*Solo v. Am. Ass'n of Univ. Women*,
187 F. Supp. 3d 1151 (S.D. Cal. 2016)............................................................ 15
*Stagner v. Luxxotica Retail North America, Inc.*,
2011 U.S. Dist. LEXIS 93733 (N.D. Cal. Aug. 22, 2011)................................. 11
*Staley v. Hotel 57 Servs., LLC*,
680 F. Supp. 3d 440 (S.D.N.Y. 2023).............................................................. 11
*Stirlen v. Supercuts, Inc.*,
51 Cal. App. 4th 1519 (1997) .......................................................................... 16
*Szetela v. Discover Bank*,
97 Cal. App. 4th 1094 (2002) .......................................................................... 13
*Tibbits Constr. Co. v. Employers' Surplus Lines Ins. Co.*,
72 Cal. App. 3d 741 (1977)............................................................................. 11
*Vera v. U.S. Bankcard Servs.*,
2017 Cal. Super. LEXIS 91345 (Los Angeles Sup. Ct. Apr. 17, 2017) ............. 17





KAZEROUNI LAW GROUP, APC

*Weinrott v. Carp*,
298 N.E.2d 42 (N.Y. 1973) .......... 20

*Wong v. Tenneco*,
39 Cal. 3d 126 (1985) .......... 3

STATUTES

9 U.S.C. § 4 .......... 20, 22

Cal. Civ. Code § 1654 .......... 11

Cal. Civ. Proc. Code § 1281.6 .......... 12

NY CPLR § 7503 .......... 20

OTHER AUTHORITIES

Restatement (Second) of Contracts § 33 (1981) .......... 10

## I. INTRODUCTION

Plaintiffs Mha Mark Rodman d/b/a Rodman Wedding Photography ("Rodman Wedding Photography"), Alana Banner d/b/a A Salon Santa Fe ("A Salone Santa Fe"), Elite Casino Events LLC d/b/a Emme Photo Booth ("Emme Photo Booth"), and Dona & Nik LLC d/b/a Morina Photography ("Morina Photography", together the "Plaintiffs") oppose The Knot Worldwide Inc's ("Defendant" or "The Knot") Motion to Compel Arbitration (Dkt. No. 19).

Based on the arguments herein, the Declaration of Mha Mark Rodman ("Rodman Decl."), the Declaration of Alana Banner ("Banner Decl."), the Declaration of Dawn Takacs ("Takacs Decl."), the Declaration of Nik Morina ("Morina Decl."), the Declaration of Jason A. Ibey ("Ibey Decl."), and the exhibits attached thereto, the Motion to Compel should be denied.

The purported arbitration agreements were never formed, and their terms are fatally ambiguous and unclear. Even if there is an agreement to arbitrate, it is subject to a valid unconscionability defense. The several and significant defects cannot be severed. Also, The Knot is alleged to have fraudulently induced Plaintiffs into paying for its services. Complaint ("Compl"), Dkt. No. 1, ¶¶ 13, 41, 158, 162-172, 178, 192. Plaintiffs are not alone in such contentions, as The New Yorker reports about The Knot's practice of inviting people to sign up for services only to be provided with fake customer leads. Exhibit 2 to Ibey Decl., ¶ 6. Even Senator Grassley has asked the FTC to investigate The Knot regarding these practices. Exhibit 1 to Ibey Decl., ¶ 5. As such, under New York Law, the claims of Morina Photography are not arbitrable due to The Knot's scheme to defraud.

## II. LEGAL STANDARD

The Federal Arbitration Act governs enforcement of arbitration agreements involving interstate commerce. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). An arbitration agreement "shall be valid, irrevocable, and enforceable, save



KAZEROUNI LAW GROUP, APC

upon such grounds as exist at law or in equity for the revocation of any contract. *Id.* at § 2. This includes defenses to contract such as fraud or unconscionability. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-47 (2011).

## III. THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED

The motion to compel arbitration should be denied for several reasons.

### A. Choice of Law

The Terms of Purchase and Terms of Use include a Maryland choice of law provision. *See, e.g.,* Dkt. No. 19-3, p. 12; Dkt. No. 19-4, p. 20. But Maryland law should not be applied. California, New York, and Pennsylvania choice of law rules analyze whether the chosen state has a substantial relationship to the parties or their transaction. *See ABF Capital Corp. v.* Osley, 414 F.3d 1061, 1065 (9th Cir. 2014); *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *Guia v. World CDJR LLC*, 2019 U.S. Dist. LEXIS 66271, at *8 (E.D. Pa. Apr. 17, 2019). Courts in those states and in New Mexico refuse to defer to a contract's choice of law if doing so "would substantially diminish the rights of [their] residents in a way that violates [the] state's public policy." *See American Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12 (2001); *see also Guia*, 2019 U.S. Dist. LEXIS 66271, at *8 ("a Court cannot enforce a contractual choice of law provision if doing so would violate the fundamental public policy of the state with the greater interest."); *Fiser v. Dell Comput. Corp.*, 188 P.3d 1215, 1218 (N.M. 2008) ("[W]hen application of the law chosen by the parties offends New Mexico public policy, our courts may decline to enforce the choice-of-law provision and apply New Mexico law instead.").

As explained *infra*, the alleged arbitration agreements each have the most significant relationship to where Plaintiffs are domiciled. All Plaintiffs signed up for The Knot and paid for its services from their respective domicile, never traveling to Maryland relating to the contracts. Rodman Decl., ¶¶ 7, 9; Banner Decl., ¶¶ 6-7;





KAZEROUNI LAW GROUP, APC

Takacs Decl., ¶¶ 6-7; Morina Decl., ¶¶ 6-7. The services Plaintiffs utilized were targeted toward their domicile and surrounding areas, not Maryland. Rodman Decl., ¶ 11; Dkt. No. 19-5, p. 2; Dkt. No. 19-6, p. 2; Dkt. No. 19-7, p. 2; Dkt. No. 19-8, p. 2. Defendant seeks to apply Maryland law merely because that is where it is located. *See* Dkt. No. 1, ¶ 23. The Knot also admits the majority of its customers are not in Maryland. Exhibit 3 to Ibey Decl., ¶ 7.

Enforcing the Maryland choice of law provision would contravene public policy means to protect Plaintiffs in each of their respective states. The Plaintiffs were harmed where they live because they each paid monies to The Knot from their respective states for services to be performed primarily in those states. Rodman Decl., ¶¶ 9, 11; Banner Decl., ¶ 7; Takacs Decl., ¶ 7; Morina Decl., ¶ 7. *See also* Dkt. No. 19-5, p. 2; Dkt. No. 19-6, p. 2; Dkt. No. 19-7, p. 2; Dkt. No. 19-8, p. 2. No harm occurred to Plaintiffs in the state of Maryland. States generally have a stronger interest of protecting their citizens from harm that occurred within their borders. *See, e.g., Wong v. Tenneco*, 39 Cal. 3d 126, 144 (1985) (Mosk, J., dissenting) ("California has a prime interest in applying its law to protect the rights of its citizens to engage in business, to enforce contractual rights, and to seek redress for tortious conduct committed within its borders.").

Thus, the Court should apply the laws of each of Plaintiffs' respective states.

**B. Formation**

Basic contract law principles relating to the formation of contracts are applied to determine the existence of a contract. *See, e.g., Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

**i. *Plaintiffs Received the Terms of Purchase (Defendant's Exhibits C to F) Only After Signing Up with The Knot***

In California, while a party to a contract "cannot avoid the terms of a contract on the ground that he or she failed to read it before signing[,] there is an exception





KAZEROUNI LAW GROUP, APC

where "the one who signs the instrument is unaware of the contractual provisions," such as "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049-50 (2001). The law is similar in New York and Pennsylvania. *See e.g., Hirsch v. Citibank, N.A.*, 2014 U.S Dist. LEXIS 83534, at *50 (S.D.N.Y. June 10, 2014); *Lewandowski v. Megabus USA, LLC*, 613 F. Supp. 3d 909, 915 (W.D. Pa. 2020).

The situations underlying Plaintiffs' purported assent to the Terms of Purchase (Defendants' Exhibits C to F) mirror those in *Hirsch*, where the court concluded the plaintiffs could not "be charged with notice of the arbitration clause" that was at issue. 2014 U.S. Dist. LEXIS 83534, at *53. Here, none of the Plaintiffs were informed during their initial discussions with The Knot's personnel that they would be agreeing to waive their right to bring a lawsuit in a court of law and instead go to arbitration to resolve disputes. Rodman Decl., ¶ 5; Banner Decl., ¶ 5; Takacs Decl., ¶ 5; Morina Decl., ¶ 5. Some of the documents indicate Plaintiffs were provided the Terms of Purchase (Defendant's Exhibits C to F) only after their calls with The Knot's personnel where they signed up for The Knot's services. *See, e.g.*, Exhibit A to Rodman Decl. (showing call scheduled for 1-1:30pm PT, or 4-4:30pm ET); Exhibit 4 to Ibey Decl., ¶ 8 (TKWW_00000108-TKWW_00000116, showing purchase confirmation being sent by The Knot to Rodman at 5:15pm with Terms of Purchase). *See also, e.g.,* Dkt. No. 19-1, ¶ 49 ("Shortly following the telephone transaction, Santa Fe was emailed a copy of the purchase confirmation, which reflected the contracted services and included the Terms of Purchase . . .."); *id.* at ¶ 63 ("After the telephone transaction, Morina was emailed a copy of the purchase confirmation . . . that reflected the contracted services and included the Terms of Purchase . . ..").



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

#### ii. *Fatal Ambiguity in the Terms of Purchase and Terms of Use*

Even The Knot is unsure which arbitration agreement applies to each of the four Plaintiffs. The Knot throws spaghetti at the wall and hopes something sticks. It clearly cannot be both the Terms of Purchase (with different versions) and the online Terms of Use. Dkt. No. 19, pp. 8, 16, 26-28. The answer is simple: Each purported arbitration agreement is not enforceable due to significant ambiguity and unclear provisions. For the same reasons, the delegation clause is unworkable.

The claimed arbitration agreements are fatally ambiguous regarding a key inquiry: who the parties agreed would officiate the arbitration. In looking to various versions of the Terms of Purchase (a document) and also the Terms of Use (on the website), the Knot fails to disclose to the Court that the Terms of Purchase ("TOP") call for use of AAA while the Terms of Use ("TOU") require arbitration through JAMS, two separate arbitration entities with different arbitration rules and procedures. Upon close inspection, regardless of version, the TOP incorporate the TOU, and the TOU incorporate the TOP, which is where the ambiguity lies.

##### a. <u>**The Terms of Purchase (Defendant's Exhibit A)**</u>

The Court can easily dispense of the TOP which The Knot claims is effective April 14, 2025. Dkt. No. 19-3.[1] Such simply cannot be applicable to three of the Plaintiffs because they terminated services before that date. And there are other reasons those TOP were not agreed to.

First, Rodman Wedding Photography requested cancellation of services in October 2024 (Rodman Decl., ¶ 14) and The Knot ultimately terminated Rodman's services in November 2024 (Dkt. No. 19-1, ¶ 48). A Salon Santa Fe terminated her

---

[1] The Knot's Index of Attached Exhibits (Dkt. No. 19-2) refers to the revised date of "April 14, 2025," but the supporting declaration says "April 28, 2025" (Dkt. No. 19-1, ¶ 29), calling into question the effective date and authenticity of that document.

services on September 3, 2024 (Dkt. No. 19-1, ¶ 53). And Emme Photo Booth terminated services on August 9, 2024 (Dkt. No. 19-1, ¶ 60).

Second, The Knot fails to meet its burden to show that such TOP were reasonably communicated to Plaintiffs such that there could be mutual assent. The Knot provides no screenshots of the pathways any of the Plaintiffs allegedly followed in visiting the WeddingPro portal or even how the terms appeared via the portal. Thus, Defendant fails to meet its burden to show the terms were provided in a conspicuous and fair manner. *See Felderman v. U.S. Bank N.A.*, 2022 U.S. Dist. LEXIS 224131, at *9 (C.D. Cal. Dec. 12, 2022). Also, that document looks nothing like the other, earlier, claimed TOP that include information specific to the Plaintiffs, such as payment period date, name of the purchaser, price of the service and services to be provided. *See e.g.*, Dkt. Nos. 19-5, 19-6 and 19-8. Rather than showing that Rodman Wedding Photography, for example, agreed to the terms of The Knot's Exhibit A, the declaration of Angel Lull instead says that the TOP for Rodman Wedding Photography are reflected in Defendant's Exhibit C (Dkt. No. 19-1, ¶ 44; Dkt. No. 19-5). That is also the case for the other Plaintiffs, in looking to Defendant's Exhibit D (Dkt. No. 19-6) and Exhibit F (Dkt. No. 19-8).

Third, a declaration from MHA Mark Rodman casts doubt on whether The Knot actually required vendors to scroll through such TOP, or any earlier version, before they could continue on, or check a box to agree to arbitration terms. *See* Rodman Decl., ¶ 8 ("I do not recall scrolling through Terms of Purchase and clicking a checkbox when I signed up for The Knot.").

Fourth, even if such version of the Terms of Purchase (calling for application of AAA rules) were applicable to some of the Plaintiffs, it still expressly incorporates the Terms of Use (calling for application of JAMS rules), creating ambiguity as to which arbitration terms apply. The Terms of Purchase document refers to application of the Terms of Use in the first paragraph, and also in the Section "Additional



KAZEROUNI LAW GROUP, APC

Agreements," where it reads: "You hereby agree to abide by and be subject to the Terms of Use and Privacy Policy as they are posted on the Site and as they may be unilaterally amended from time to time by TKWW." Dkt. No. 19-3, p. 6, Defendant's Exhibit A.

**b. <u>The Terms of Use (Defendant's Exhibit B)</u>**

The Knot contends that the TOU apply in the alternative to the TOP. Dkt. No. 19, pp. 19-21. In some places, The Knot represents that the effective date of its Exhibit B is "August 20, 2024" (Dkt. No. 19-2), and elsewhere states the document is as it existed on April 28, 2025 (Dkt. No. 19-1, ¶ 36).

First, Defendant's Exhibit B cannot apply to Plaintiff Emme Photo Booth, who terminated services on August 9, 2024 (Dkt. No. 19-1, ¶ 60). The Knot also did not submit to the Court any earlier version of the Terms of Use, and it should not be permitted to do so for the first time in a reply brief.[2]

Second, The Knot fails to meet its burden to show that such TOU were reasonably communicated to the other three Plaintiffs such that there could be mutual assent. The Knot did not submit evidence showing that each of the Plaintiffs actually saw the TOU on its website, nor indicate the date of such activity for each of the Plaintiffs. *See* Dkt. No. 19-1, ¶ 11-12.

The only website screenshots provided with the Motion to Compel are Exhibits 1 and 2 (archived pages from 2019 and 2021 from The Wayback Machine, not documents in the custody of The Knot), which do not reflect any requirement to scroll to review terms of arbitration to consent to arbitration. Dkt. Nos. 19-10 and 19-11. Exhibit 2 does not even contain a checkbox. Dkt. No. 19-11. The buttons to

---

[2] It would violate Plaintiffs' rights to procedural due process for The Knot to introduce such new evidence in a reply brief. *See e.g., United States v. Martinez-Leon*, 565 F. Supp. 2d 1131, 1131 (C.D. Cal. 2008) (declining to consider declaration in reply brief as "improperly presented evidence").



KAZEROUNI LAW GROUP, APC

proceed do not clearly call out a user's entering a legal contract, including one imposing arbitration, as they merely say "Elevate Your Business" or "Connect with us," with reference to "terms of use" above in tiny print. Dkt. Nos. 19-10, 19-11. Thus, the TOU on the website were not conspicuous or fairly made known. *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014).

Third, even if Exhibit B (TOU) is considered to have been the same from August 20, 2024 through April 28, 2025, Section 2(b), expressly incorporates the TOP, stating: "Additional terms and conditions described in the Terms of Purchase apply to such Paid Subscriptions, and are made a part of the Terms by reference." (Dkt. No. 19-4, p. 4). This similarly creates significant ambiguity with respect to which arbitration terms apply.

The Knot may argue the Terms of Use here control in the case of a conflict, but a careful reading of the same paragraph shows otherwise. In particular, the next sentence refers to "terms for any service offered on or through the Service" (*id*.). It does not reference "Terms of Purchase," nor does it mention terms relating to "arbitration." Thus, a proper reading of that sentence is that only the Terms of Use control over contrary "terms for any service offered on or through the Service"; it has nothing to do with arbitration-related terms. Thus, such provision does not remove the ambiguity as to which arbitration terms (and arbitration entity) applies.

**c. <u>The Terms of Purchase (Defendant's Exhibits C, D, E and F)</u>**

The Knot states that its Exhibit C, D, E and F represent a version of TOP for each of the four Plaintiffs. *See* Dkt. No. 19-2, and 19-5 to 19-8. As far as Plaintiffs can tell, The Knot does not take the position that these earlier versions (some from 2020, 2022 or 2023) are controlling. Instead, it appears that The Knot believes either the TOP (Exhibit A) or the TOU (Exhibit B) apply. Dkt. No. 19, pp. 8, 16, 26-28. Regardless, in each instance, such earlier TOP, which call for application of AAA,



KAZEROUNI LAW GROUP, APC

expressly incorporate TOU, which, again, creates uncertainty with respect to which arbitration rules and terms apply. They do so by reference to "Terms of Use" in the first paragraph and also in the sections which read: "**ADDITIONAL AGREEMENTS**. You hereby agree to abide by and be subject to the Terms of Use and Privacy Policy as they are posted on the Site and as they may be unilaterally amended from time to time by TKWW." *See* Dkt. No. 19-6, p. 3; Dkt. No. 19-7, p. 4; Dkt. No. 19-8, p. 4 (Bold type in originals, except for Exhibit F).

Since The Knot did not include any version of the TOU that was in effect prior to August 20, 2024, the Court cannot know what arbitration terms were contained in any Terms of Use at the time in 2020, 2022 and 2023, such as whether it called for use of JAMS. If the terms were identical in material respects those as of August 20, 2024, there is a conflict with respect to which arbitration entity applies because the Terms of Use call for arbitration with JAMS (Dkt. No. 19-4, p. 21), while each version of the TOP require arbitration with AAA (Dkt. No. 19-3, p. 13; Dkt. No. 19-5, p. 6; Dkt. No. 19-6, p. 4; Dkt. No. 19-7, p. 6; Dkt. No. 19-8, p. 6).

Arbitration cannot be enforced based on the versions of the TOU at the time in 2020, 2022 or 2023 (Exhibits D to F) due to uncertainty as to which arbitration terms (and arbitration entity) applies. The Court cannot enforce arbitration where key terms of the alleged arbitration agreements (in the incorporated TOU) are missing because The Knot did not supply those earlier versions of the TOU (or even the "Privacy Policies"), which apparently existed in some form in 2020, 2022 and 2023, given that The Knot expressly incorporating such documents into the TOP. *See, e.g., Memory Integrity, LLC v. Intel Corp.*, 178 F. Supp. 3d 1022, 1030 (D. Or. 2016) ("A contract's material terms also must be sufficiently definite to be enforceable.") (citing *Indep. Cellular Tel., Inc. v. Barker*, 1997 WL 153816, at *4 (Del. Ch. Mar. 21, 1997) ("The material terms of a contract will be deemed fatally vague or indefinite if they fail to provide a reasonable standard for determining



KAZEROUNI LAW GROUP, APC

whether a breach has occurred and the appropriate remedy.”)); *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991) (“… but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.”) (citing *Champaign National Bank v. Landers Seed Co.* (1988), 165 Ill. App. 3d 1090; Restatement (Second) of Contracts § 33 (1981)).

**d. <u>The Delegation Clause is Unworkable</u>**

It is presumed that courts, not arbitrators, decide the gateway issues of arbitrability unless the parties clearly and unmistakably provide otherwise. *See O'Connor v. Uber Techs., Inc.*, 150 F. Supp. 3d 1095, 1101 (N.D. Cal. 2015). Because of the ambiguity explained above regarding who is to officiate the arbitration (i.e., AAA or JAMS), and which version of the arbitration rules and procedures apply depending on which contract controls (due to the different alleged contract dates), the delegation clause is unworkable.

As such, the delegation clause here is unenforceable. Without knowing which arbitrator is to decide questions such as scope or arbitrability, for example, an arbitration cannot even be initiated. Both AAA[3] and JAMS[4] have different rules and procedures – they are not interchangeable. Compare Dkt. No. 19-3, p. 13 (referencing “AAA's Commercial Arbitration Rules and Mediation Procedures and Consumer Related Disputes Supplementary Procedures …”) with Dkt. No. 19-4, p. 21 (referencing “(i) the JAMS Streamlined Arbitration Procedure Rules, for claims that do not exceed $250,000; or (ii) the JAMS Comprehensive Arbitration Rules and Procedures, for claims exceeding $250,000.”).

---

[3] https://www.adr.org/rules-forms-and-fees/ (last accessed Oct. 22, 2025).
[4] https://www.jamsadr.com/adr-rules-procedures/ (last accessed Oct. 22, 2025).



KAZEROUNI LAW GROUP, APC

**e. Ambiguities and Uncertainties are to Be Construed Against The Knot as the Drafter**

The Knot cannot credibly argue that Plaintiffs drafted any portion of the TOP or the TOU, as those agreements were presented by The Knot on a take-it-or-leave-it basis with largely uniform (standardized) language. *See* Dkt. No. 19-1, ¶¶ 11-13, 16-17, 19-20, 25, 28; *see also* Dkt. Nos. 19-3 to 19-8. Each Plaintiff declares that they were not even informed of arbitration when they initially signed up for The Knot's services. Rodman Decl., ¶ 5; Banner Decl., ¶ 5; Takacs Decl., ¶ 5; Morina Decl., ¶ 5.

The Knot is the drafter of the TOP and TOU, and therefore, any uncertainty is to be construed against it and in favor of Plaintiffs who had no role in negotiating the arbitration terms. In cases involving uncertainty, the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist. *See* Cal. Civ. Code § 1654; *Healy Tibbits Constr. Co. v. Employers' Surplus Lines Ins. Co.*, 72 Cal. App. 3d 741, 749 (1977); *Lawson v. City of Phila.*, 2019 U.S. Dist. LEXIS 30010, at *11 (E.D. Pa. Feb. 22, 2019) ("Under Pennsylvania contract law, where an arbitration provision is ambiguous, its meaning is construed against the drafter"); *Pacheco v. Sec. Fin. Corp.*, 2006 U.S. Dist. LEXIS 116561, at *3 (D.N.M. June 7, 2006) ("Under New Mexico law, ambiguities in contracts are construed against the drafter."); *Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440, 448 (S.D.N.Y. 2023) ("[A]mbiguities in a contract must be construed against the drafter."); *Stagner v. Luxxotica Retail North America, Inc.*, 2011 U.S. Dist. LEXIS 93733, at *13-14 (N.D. Cal. Aug. 22, 2011) (denying motion to compel arbitration where agreement was ambiguous); *see also NAACP of Camden County East*, 421 N.J. Super. 404, 438 (Aug. 2, 2011) (finding arbitration agreement unenforceable due to many inconsistencies and unclear passages).

Courts do not have the power to rewrite contracts, including the arbitration agreement(s) here. *See Rosen v. State Farm General Ins. Co.*, 30 Cal. 4th 1070, 1078 (2003); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 185-86 (2002) ("We cannot save the contract by simply hacking off the provisions governing what claims are arbitrable, how fees and costs will be allocated and what organization will conduct the arbitrations. If we did so there would be virtually nothing of substance left to the contract. Instead, we would need to rewrite those provisions according to what we believed was fair and equitable. This, of course, we cannot do."); *Constr. Mach. Co. v. Willard & Rodman, Inc.*, 208 Cal. App. 2d 31, 38 (1962) ("The trial court cannot rewrite the contract.").

Cal. Civ. Proc. Code § 1281.6 does not save the ambiguous provisions regarding who is to officiate over the arbitration, including the delegation clause, as the TOU or TOP provide for appointment of an arbitrator (an arbitration entity), but the contracts are ambiguous because each version or type (through incorporation provisions) seeks to appoint two different arbitration entities, AAA and JAMS. That is clearly unworkable because two arbitration entities cannot administer the same arbitration. Thus, the latter portion of that Code allowing for a petition to the court to appoint an arbitrator is inapplicable, since that is only permitted in situations where "the arbitration agreement <u>does not</u> provide a method for appointing an arbitrator …" *Id*. (emphasis added). Further, there can be no delegation of questions of scope, arbitrability, enforceability, etc. to an arbitrator when the contracts are uncertain as to whether AAA or JAMS is to officiate over any such arbitration. The Court cannot simply choose one of those entities without rewriting the agreements to arbitrate.

**iii. *The Inconsistent Forum Selection Clauses***

The TOU incorporate the TOP, and vice versa, which creates ambiguity, as explained above. The TOP require arbitration in Montgomery County, Maryland.



KAZEROUNI LAW GROUP, APC

Dkt. No. 19-3, p. 13. But the TOU create even more ambiguity because, in one section titled "Governing law; Venue and Jurisdiction Provision," there is a Maryland forum selection clause, but in another section under the "MANDATORY ARBITRATION AND CLASS ACTION WAIVER," it states: "[i]f you are a resident of the United States, arbitration may take place in the county where you reside at the time of filing . . .." Dkt. No. 19-4, p. 21.

Therefore, Plaintiffs did not agree to be bound by arbitration. Also, the delegation clause is unworkable and therefore unenforceable.

**C. Unconscionability**

Generally, an agreement is unconscionable if it is both procedurally and substantively unconscionable. *See Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981 (9th Cir. 2007); *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017); *Jean v. Bucknell Univ.*, 2021 U.S. Dist. LEXIS 73384, at *18 (M.D. Pa. Apr. 16, 2021). But under New Mexico law, a contract may be procedurally unconscionable or substantively unconscionable. *Brophy v. Ament*, 2008 U.S. Dist. LEXIS 108896, at *40 (D.N.M. July 9, 2008). Even under Maryland law, unconscionability is a recognized contract defense. *Freedman v. Comcast Corp.*, 190 Md. App. 179, 207-08 (2010). Procedural and substantive unconscionability need not be present in the same degree. *See Armendariz v. Foundation Health Psychare Servs., Ins.*, 24 Cal. 4th 83, 114 (2000); *Shroyer*, 498 F.3d at 981-82; *Eisen*, 244 F. Supp. 3d at 341; *Jean*, 2021 U.S. Dist. LEXIS 73384, at *19; *Cordova v. World Fin. Corp.,* 146 N.M. 256, 263 (2009).

***i. The Arbitration Agreements and Delegation Clause are Procedurally Unconscionable***

"Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion." *Szetela v. Discover*





KAZEROUNI LAW GROUP, APC

*Bank*, 97 Cal. App. 4th 1094, 1099-100 (2002); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (reasoning that a contract may be unenforceable when "a plaintiff is able to demonstrate an absence of meaningful choice."); *Brophy*, 2008 U.S. Dist. LEXIS 108896, at *40 ("A contract is procedurally unconscionable 'only where the inequality is so gross that one party's choice is effectively non-existent.'").

First, the arbitration agreements, including the delegation clause, are contracts of adhesion because they were presented on a take-it-or-leave-it basis. A contract of adhesion "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961); *Brophy*, 2008 U.S. Dist. LEXIS 108896, at *42; *Jean*, 2021 U.S. Dist. LEXIS 73384, at *39. They are standardized contracts which were drafted by The Knot only, and Plaintiffs are said to have been required to agree to their arbitration provisions.[5] *See, e.g.,* Dkt. No. 19-2, ¶ 55 ("Emme was required to agree to the Terms of Use which it did on July 19, 2022"). *See generally, e.g.,* Dkt. Nos. 19-3, 19-4; *see also* Dkt. No. 19-2, ¶¶ 30, 36; Dkt. No. 19-3, p. 12. No Plaintiff had an opportunity to negotiate the terms of the arbitration agreements at issue because they were not made aware by The Knot that there was any arbitration agreement in the first place. Rodman Decl., ¶ 5; Banner Decl., ¶ 5; Takacs Decl., ¶ 5; Morina Decl., ¶ 5.

---

[5] While there are short 30-day opt-out provisions in each of the TOP and TOU submitted by The Knot as evidence, Plaintiffs were not made aware of the terms of the arbitration provisions at the time they signed up for The Knot's services. Rodman Decl., ¶ 5; Banner Decl., ¶ 5; Takacs Decl., ¶ 5; Morina Decl., ¶ 5. Also, an opt-out right, by itself, does not remove other aspects contributing to procedural unconscionability. *See Gentry v. Superior Court*, 42 Cal. 4th 443, 470 (2007), *superseded by statute on other grounds*.



KAZEROUNI LAW GROUP, APC

There is also significantly unequal bargaining power here. The Knot is a "leading wedding and events planning marketplace globally" (Dkt. No. 1, ¶ 26 [internal quotation marks omitted]) and is "used throughout the country [and] purportedly used by millions of couples to find their wedding vendors, who pay to advertise on it" (*id.* at ¶ 3). On the other hand, each of the Plaintiffs is a small business that is either a sole proprietorship or a limited liability company with a small number of members and, at most, have a handful of employees working for them on a seasonal basis. Rodman Decl., ¶ 4; Banner Decl., ¶ 4; Takacs Decl., ¶ 4; Morina Decl., ¶ 4. The size of these businesses is relevant. For instance, in *I C L, Inc. v. Smithson*, the court concluded that a forum selection clause should not be enforced because there was a disparity in the bargaining power between the parties, one being a sole proprietorship and the other being a large corporation. 1986 U.S. Dist. LEXIS 25856, at *8-9 (N.D.N.Y. May 6, 1986). Plaintiffs are all small businesses like the sole proprietorship in *I C L, Inc.*, and therefore have much less and even disparate bargaining power compared to The Knot, a worldwide business. *See* Dkt. No. 1, ¶¶ 19-22, 26.

The Knot also did not provide Plaintiffs with a copy of any of the arbitration rules mentioned in its TOP or TOU. Notably, "California courts have found that a degree of procedural unconscionability may be found when an arbitration provision refers to arbitration rules, but a copy of those rules [is] [sic] not provided to the individual." *Solo v. Am. Ass'n of Univ. Women*, 187 F. Supp. 3d 1151, 1161 (S.D. Cal. 2016). Courts have similarly found unconscionability when an arbitration agreement does not specify what particular arbitration rules apply. *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 247 (2016).

Like in *Carbajal*, The Knot did not provided Plaintiffs with either the AAA or JAMS rules referred to in its TOP or TOU, nor has The Knot provided links to the respective sets of rules. *Cf.* Rodman Decl., ¶ 5; Banner Decl., ¶ 5; Takacs Decl.,



KAZEROUNI LAW GROUP, APC

¶ 5; Morina Decl., ¶ 5. *See also, e.g.*, Dkt. No. 19-3, p. 13; Dkt. No. 19-4, p. 21. The TOP apply AAA's Commercial Arbitration Rules (Dkt. No. 19-3, p. 13),[6] but the TOU instead apply "either (i) the JAMS Streamlined Arbitration Procedure Rules, for claims that do not exceed $250,000; or (ii) the JAMS Comprehensive Arbitration Rules and Procedures, for claims exceeding $250,000" (Dkt. No. 19-4, p. 21). As explained at *supra* § III.B.i, The Knot did not provide the TOP (Defendant's Exhibits C to F) until after they each signed up, depriving them of a reasonable opportunity to assent to its arbitration provision through unfair surprise.

Thus, significant procedurally unconscionable is present.

**ii. *The Arbitration Agreements and Delegation Clause are Substantively Unconscionable***

Substantive unconscionability looks at whether the agreement is so one-sided as to be objectively unreasonable. *See Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997); *see also Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016); *Jean*, 2021 U.S. Dist. LEXIS 73384, at *18-19 ("A contract is substantively unconscionable when it unreasonably favors 'the arty with the greater bargaining power.'") ; *Cordova*, 146 N.M. at 262 ("The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, and other similar public policy concerns."). "A determination of substantive unconscionability involves whether the terms of the contract are unduly harsh or oppressive." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1075 (9th Cir. 2007) (internal quotation marks omitted), *overruled on other grounds by Kilgore v. KeyBank Nat. Ass'n*, 673 F.3d 947 (9th Cir. 2012).

---

[6] It is worth noting the Top also include "Consumer Related Disputes Supplementary Procedures" (Dkt. Nos. 19-3, ID # 147; *see also* Dkt. No. 19-5, ID # 183), which must mean even The Knot believes Plaintiffs (small business owners should be treated more like consumers than businesses).



KAZEROUNI LAW GROUP, APC

**a. The Venue Selection Clause**

The venue selection clause is substantively unconscionable because it requires Plaintiffs to arbitrate their claims in Maryland. Dkt. No. 19-3, p. 13 ("You agree that any arbitration shall be conducted in Montgomery County Maryland."); Dkt. No. 19-4, p. 20; Dkt. No. 19-5, p. 6 (same); Dkt. No. 19-6, p. 4 (same); Dkt. No. 19-7, p. 6 (same); No. 19-8, p. 6 (same). *See Vera v. U.S. Bankcard Servs.*, 2017 Cal. Super. LEXIS 91345, at *34 (Los Angeles Sup. Ct. Apr. 17, 2017); *see also Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 253 (2015); *Cf. Jean*, 2021 U.S. Dist. LEXIS 73384, at *33-34 (finding one party's unilateral selection of arbitral forum unconscionable).

As in *Vera*, Plaintiffs can show that the Maryland forum selection is unconscionable because "an arbitration in [Maryland] would not have been in [their] reasonable expectations." *See* 2017 Cal. Super. LEXIS 91345, at *33. All four Plaintiffs declare they have "at all relevant times been [] resident[s] of [their respective states,]" nor have they been Maryland residents. *Id.* *See also* Rodman Decl., ¶¶ 4, 12; Banner Decl., ¶¶ 4, 9; Takacs Decl., ¶¶ 4, 9; Morina Decl., ¶¶ 4, 9. Plaintiffs have primarily conducted their business and paid for The Knot's services within their respective states, not Maryland. *See* 2017 Cal. Super. LEXIS 91345, at *33-34 ("[A]ll of his customers patronized his business in California, and the bills he received from Defendant U.S. Bankcard and/or Elavon were sent to him in California."). *See also* Rodman Decl., ¶¶ 9-11; Banner Decl., ¶¶ 7-8; Takacs Decl., ¶¶ 7-8; Morina Decl., ¶¶ 7-8. Indeed, Plaintiffs state it would be unreasonably expensive to arbitrate in Maryland, as they all reside in other states. Rodman Decl., ¶ 12; Banner Decl., ¶ 9; Takacs Decl., ¶ 9; Morina Decl., ¶ 9.

Plaintiffs utilized The Knot's services in their respective states (and, at most, immediately adjacent states) only. *See* Dkt. No. 19-5, p. 2 (showing Rodman Wedding Photography signed up for services targeting Los Angeles and Orange

County, California, only); Dkt. No. 19-6, p. 2 (showing A Salon Santa Fe's services targeting Albuquerque, New Mexico only); Dkt. No. 19-7, p. 2 (showing Emme Photo Booth services targeting Pittsburgh, Pennsylvania, only); Dkt. No. 19-8, p. 2 (showing services in Philadelphia, Pennsylvania for Morina Photography). *See also* Rodman Decl., ¶ 11 ("Rodman Wedding Photography also used The Knot's services to advertise and get leads in the State of California only.").

By The Knot's own concession, it "has customers across the United States and does not have a majority of customers in any one state, including Maryland." Exhibit 3 to Ibey Decl., ¶ 7.

**b. Unilateral Amendment Rights**

"An arbitration agreement may . . . be unconscionable where it allows one party to . . . unilaterally amend the arbitration agreement." *See Jean*, 2021 U.S. Dist. LEXIS 73384, at *20. Both the TOP and TOU are one sided in that they permit The Knot to unilaterally modify their terms. *See* Dkt. No. 19-3, p. 14 ("… Customer acknowledges and agrees that [The Knot] may amend this Agreement and change or adjust the business and commercial terms and conditions, and all other terms and conditions, at any time and from time to time . . .."); Dkt. No. 19-4, p. 3 ("We reserve the right, in our sole discretion, to change, modify, add, or remove portions of these Terms at any time ...").

While the different versions of the agreements provide for some notice of unilateral modifications (Dkt. No. 19-3, p. 15 [notice is on website, customer account accessible on website, or at The Knot's "sole discretion"]; Dkt. No. 19-4, p. 22 [providing thirty days' notice of "material changes" only by "posting notice on the Services or informing you via email"]), they are both still unconscionable under Pennsylvania law to the extent such unilateral modification "impos[es] obligations on a party without its consent." *Jean*, 2021 U.S. Dist. LEXIS 73384, at *29. As in *Jean*, the unilateral modification language in both agreements is "unconscionable

because [they] render[] the agreement[s] to arbitrate illusory and because it unreasonably advantages [The Knot]." *Id.* at *28. Thus, under Pennsylvania law, the arbitration agreements are substantively unconscionable as to Emme Photo Booth.

**c. <u>The Delegation Clause</u>**

As in *Osterhaus Pharmacy Inc. v. CVS Health Corp.,* 2024 U.S. Dist. LEXIS 206717, at *26 (D. Ariz. Nov. 13, 2024), the delegation clause in the Terms of Purchase and Terms of Use here are unenforceable when read in conjunction with the arbitration agreement's fee shifting provision," because it may require Plaintiffs to pay more in costs if they lose the arbitration than if they lost the case in a court of law. Defendant's Exhibit A (regarding AAA) provides: "In any arbitration, the parties will split the cost of the filing fee, plus the costs associated with the first day of arbitration, with the remaining costs of arbitration paid by the non-prevailing party …" (Dkt. No. 19-3, p. 13). Even worse, Defendant's Exhibit B (regarding JAMS) states: "… in some instances, the costs of arbitration could exceed the costs of litigation …." (Dkt. No. 19-4, p. 21).

**d. <u>Deliberate Exclusion from Arbitration of Certain Claims Defendant is More Likely to Initiate</u>**

The Knot's deliberate exclusion of certain claims from arbitration, which the Knot is much more likely to bring than Plaintiffs, in the TOU is unconscionable. *See* Dkt. No. 19-4, pp. 20, 22 (exempting from arbitration claims "relating to theft, piracy, or unauthorized use of intellectual property . . ." while broadly stating that "any and all disputes" are subject to arbitration). The Knot even has an entire section dedicated to protection of its intellectual property content in Section 8. *See id.* As such, the provision is unfairly one-sided, even if facially bilateral because the practical effect is to unfairly favor The Knot as the drafter. This is supported by California, New Mexico, and Pennsylvania law. *See Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 495 (2024) ("Ramirez asserted the Agreement was



KAZEROUNI LAW GROUP, APC

unconscionable because it compelled arbitration of claims more likely to be brought by an employee and excluded claims more likely to be brought by Charter. The trial court rejected the argument, but the Court of Appeal did not. It held the lack of mutuality in the Agreement's covered and excluded claims clauses was substantively unconscionable. We agree."); *Peavy v. Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 225-26 (2020) (in New Mexico, holding "the Agreement is facially one-sided in that it excludes the Facility's likeliest claim from mandatory arbitration, but requires its residents to arbitrate their likeliest claims."). *See also, e.g.*, *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 207 (3d Cir. 2010) (finding unconscionability due to the pervasive one-sided nature of the agreement, the only conceivable purpose of which was to stack the deck in the drafter's favor).

Accordingly, the agreements are both procedurally and substantively unconscionable and therefore not enforceable.

**e. <u>The Knot's Grand Scheme to Defraud</u>**

Under New York law, the claims of Morina Photography are not arbitrable where the entire contract for services, including the arbitration provision, were induced by fraud as part of a grand scheme by The Knot to make money by promising real leads but then providing fake leads. *See* Dkt. No. 1, ¶¶ 1, 13, 37, 41, 162-168, 106-104, 107, 123-125; Exhibits 1-2 to Ibey Decl., ¶¶ 5-6; *Weinrott v. Carp*, 298 N.E.2d 42, 46 (N.Y. 1973) ("Of course, if the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract."). The Knot did not even inform Morina Photography of arbitration at the time of signing up for services. Morina Decl., ¶ 5. The question of this alleged fraudulent scheme should be adjudicated before a jury trial. *Browne v. Solar*, 2024 N.Y. Misc. LEXIS 20796, at *6 (Sup. Ct. June 17, 2024) ("When disputed factual issues exist with respect to whether fraud permeated an entire contract, a hearing pursuant to CPLR § 7503 [a]



KAZEROUNI LAW GROUP, APC

is required …"); *see also* 9 U.S.C. § 4. The Knot should not be permitted to impose confidential arbitration as cover for its alleged fraudulent business practices.

**D. Severability**

"[T]he mere presence of a severability clause is not dispositive." *Ronderos v. USP Reddaway, Inc.*, 2021 U.S. Dist. LEXIS 105731, at *22 (C.D. Cal. June 2, 2021). Indeed, courts have refused to sever unconscionable terms notwithstanding the presence of such clauses when unconscionability has permeated the entire agreement. *See Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 627 (2015); *Jean*, 2021 U.S. Dist. LEXIS 73384, at *46 ("In such circumstances, where 'the sickness has infected the trunk, [the court] must cut down the entire tree.'"); *Nino*, 609 F.3d at 206.

As explained above, many of the provisions in the TOP or TOU are unconscionable or otherwise defective (*see, supra*, § III.C), so much so that "the agreement[s are] permeated by unconscionability." *Carlson*, 239 Cal. App. 4th at 639. For instance, like in *Carlson*, Plaintiffs here would be required "to arbitrate all of [their] nonexempt claims while [The Knot] enjoy[s] unfettered access to the courts for its most important and likely claims against [Plaintiffs]." *Id. See, supra*, § III.C.ii.d. And, similar to *Carlson*, "only [Plaintiffs are] required to demand dispute resolution of [their] claims against [The Knot] . . ." and such a limitation was not imposed on The Knot. *Id.* at 640. The unconscionability then goes beyond *Carlson* for the various reasons discussed above, including but not limited to the unequal bargaining power between the parties, the unilateral right of The Knot to amend its agreements, and the venue selection and choice of law clause requiring all Plaintiffs to arbitrate in Maryland under Maryland law as well as the various ambiguities. Most importantly, the as to who will be the arbitrator and which arbitration rules are to be applied (*see, supra*, § III.C) goes to the heart of the agreements to arbitrate—without such clarity, the arbitration agreements fail.

KAZEROUNI LAW GROUP, APC

Therefore, the Court cannot sever the several offending provisions. The purported arbitration agreements must instead be deemed unenforceable.

## V. DEMAND FOR TRIAL

Pursuant to 9 U.S.C. § 4, Plaintiffs demand a trial on all factual disputes relating to whether Plaintiffs entered into an agreement to arbitrate and which arbitration terms may apply. *See Hill v. Quicken Loans, Inc.,* 2019 U.S. Dist. LEXIS 226770, at *6 (C.D. Cal. Oct. 17, 2019) (ordering evidentiary hearing).

## VI. CONCLUSION

For the foregoing reasons, the Motion to Compel Arbitration should be denied as to each of the four Plaintiffs.

Dated: October 23, 2025

Respectfully Submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Jason A. Ibey, Esq.*

Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
*Attorneys for Plaintiffs*



KAZEROUNI LAW GROUP, APC

## CERTIFICATION OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6903 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 23, 2025

**KAZEROUNI LAW GROUP, APC**

By: */s/ Jason A. Ibey, Esq.*
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
*Attorneys for Plaintiffs*

KAZEROUNI LAW GROUP, APC